PERMELIA D. MINER v. THE TRUSTEES OF THE MICHIGAN MUTUAL BENEFIT ASSOCIATION OF HILLSDALE.

*Mutual benefit associations—Judgment—Return of execution unsatisfied—Mandamus—Sequestration—Equity.*

A beneficiary under a policy or certificate of insurance, issued by a mutual benefit association organized under chapter 118 of How. Stat., recovered a judgment against the corporation, and an execution issued thereon was returned unsatisfied. The judgment creditor thereupon applied for a *mandamus* requiring the proper officers of the corporation to make an assessment upon the members to pay the judgment.

*Held,* that under How. Stat. § 8153, providing that in such a case the circuit court of the proper county may sequestrate the stock and property of the corporation, and appoint a receiver of the same, no further proceedings at law can be resorted to to enforce collection of the judgment, and that equity alone can furnish the proper remedy, as sequestration can be had in no other court.

Mandamus to compel assessment by mutual benefit association. Submitted February 1, 1887. Denied February 10, 1887. The facts are stated in the opinion.

*Lyon & Hackleman,* for relator.

*Austin Blair,* for respondents.

SHERWOOD, J.   The respondents are trustees of a mutual benefit association, organized under chapter 118, How. Stat.

Sections 1, 2, 4, and 6 of this chapter read as follows:

"Section 1. The People of the State of Michigan enact, That any number of persons, not less than five, may become a body corporate and politic for the purpose of securing to the families or heirs of any member upon his death a certain sum of money, to be paid by such corporation, either out of its fund or by an assessment made upon the members of such corporation, or upon the members of the class in such corporation to which such deceased member belonged, or for the purpose of securing, in the same manner, a certain sum of money, weekly or monthly, to any member disabled from attending to his ordinary duties by sickness or other disability, by executing under their hands, and acknowledging before some person within this State authorized to take the acknowledgment of deeds, one or more duplicate articles of agreement, as hereinafter specified, one copy whereof shall be filed and recorded in the office of the Secretary of State; and a record shall be made of such articles, or of a certified copy thereof, in the clerk's office of the county in this State in which the principal office of such association may be located.

"Sec. 2. That upon the execution and filing of such articles, the signers thereof, and those who may thereafter become associated with them, shall become a body politic and corporate, for the purpose hereinbefore set forth."

"Sec. 4. The affairs of such corporation shall be managed by not less than five nor more than twenty trustees, to be chosen by the members thereof, and to hold office for one year, and until their successors be chosen; and the regular officers thereof, except the secretary and treasurer, shall form a part of such trustees, and the secretary and treasurer shall be chosen from such trustees.   The officers may be chosen by the trustees, or by the members of such corporation, as the articles may prescribe.   The by-laws of such corporation shall be adopted by the trustees, who may change them at their pleasure, except so far as they relate to the rights of the corporation to assess their members, or the members of a particular class of such corporation, and except, also, so far as said by-laws affect the rights and benefits belonging to, or to be derived by, the members of such corporation. A majority of the trustees shall be a quorum to transact business.   All of such trustees shall be citizens of the United States, and residents of the State of Michigan."

"Sec. 6. All the funds received by any such corporation shall be used in the first instance, or shall be invested, and the increase thereof used (after paying necessary expenses), for the exclusive purpose set forth in the articles of association: *Provided*, that any such corporation may, in its articles of agreement, specify the kinds of securities in which its funds shall be invested."

Articles of association, and by-laws thereunder, were duly adopted, whereby the association was to continue 30 years, and locating its principal office for the transaction of business at the city of Hillsdale, in this State. The objects of the association, as stated in its articles, are as follows:

"Section 1. The object of this association shall be (1st) to unite fraternally all persons of sound mind, in good health, and of temperate habits and good moral character, between the ages of twenty and sixty years of age.

"Sec. 2. (2d) To establish a benefit fund, from which, on the satisfactory evidence of the death of a member of this association who has complied with all its lawful requirements, a sum, not exceeding three thousand dollars, shall be paid to their family, or those dependent upon them, as they may direct.

"Sec. 3. (3d) To secure to any surviving member in good standing a sum not exceeding three thousand dollars, after a given length of time, or, in case of total disability of a member by the loss of their limbs, arms, or eyes, either by disease or accident, as provided by the by-laws, a certain sum of money in accordance with the by-laws regulating the same. Persons becoming members of this corporation may become full-rate members or half-rate members: *Provided*, however, that, should a death occur when one full assessment on each member would not amount to three thousand dollars, then the sum paid shall be the amount of one full or one-half of a full assessment on each member in good standing at the date of such death, and such amount shall be all that can be claimed by any one. There shall be no classes in said corporation except between full-rate and half-rate members."

The revenues of the association are a membership fee of ten dollars, a medical examination fee of one dollar, to be paid by each member when admitted, a *per capita* tax of three

dollars per annum, and assessments levied in cases of deaths of members.

The relator in this case was a beneficiary in a policy or certificate issued by the respondents upon the application of Floyd W. Miner, her husband, dated the eighth day of October, 1883. By the terms of this certificate the applicant became a member of the respondent company, and, by complying with its provisions, was entitled to the benefits of the organization, and, in case of his death, the relator became entitled to have of the company a sum of money not exceeding $3,000, to be determined under the terms of the articles of association and by-laws of the company, which constituted a part of the contract of insurance.

Floyd W. Miner died about the fifth day of July, 1884.

The respondents denied any liability to the relator under the certificate taken out by the deceased, whereupon the relator brought suit, in the circuit court for the county of Shiawassee, against the respondents, to determine the liability of the company, and recovered a judgment for the sum of $3,106.17, and costs of suit. On appeal to this Court, said judgment was affirmed on the twenty-eighth day of October, 1886. 63 Mich. 338. The relator caused execution to be issued upon said judgment, and the same was duly returned unsatisfied, on the twenty-seventh day of December, 1886, for want of property to levy upon.

On the seventeenth day of January, 1887, relator filed her petition in this Court for a *mandamus*, setting forth the foregoing facts, and praying that a writ may issue to the board of trustees of the respondent company, requiring them to make an assessment upon all the members of the association sufficient to pay said judgment, with the interest thereon and costs of suits, and that they pay said amount to the relator, and that she may have such other order as may be just and equitable.

The respondents make answer to the order to show cause,

and say, among other things, that, when they were called upon to make payment of the judgment by the attorney for the relator, the company had no money with which to pay the same, and could not raise it except by an assessment upon the members of the association liable to be assessed for that purpose according to the articles of association and by-laws thereof, and that, under these, no one was entitled to receive the proceeds of more than one assessment upon the death of a member, and that the company has never refused to make an assessment, and pay the same to relator; that on the thirteenth day of December, 1886, a regular meeting of the trustees of the association was held to make an assessment upon all the members of the association liable to be assessed for the loss in consequence of which the relator claims, and that said assessment was made, and notice thereof given to the members assessed, according to the by-laws of the association and the resolution making such assessment, and that the same is being carried forward in good faith, and that the said assessment is the only lawful one they can make for the payment of said claim ; and the respondents rely upon the following paragraph contained in the articles of association, and which constitutes a part of every contract of insurance issued by the company, viz.:

"Persons becoming members of this corporation may become full-rate members or half-rate members : *Provided,* however, that, should a death occur when one full assessment on each member would not amount to three thousand dollars, then the sum paid shall be the amount of one full or one-half of a full assessment on each member in good standing at the date of such death, and such amount shall be all that can be claimed by any one. There shall be no classes in said corporation except between full-rate and half-rate members."

The following provision is contained in the statute (How. Stat. § 8153), viz.:

"Whenever a judgment at law or a decree in chancery shall be obtained against any corporation incorporated under

the laws of this State, and an execution issued thereon shall have been returned unsatisfied in part or in whole, upon the petition of the person obtaining such judgment or decree, or his representatives, the circuit court within the proper county may sequestrate the stock, property, things in action, and effects of such corporation, and may appoint a receiver of the same.''

The respondents are trustees of a corporation existing under the laws of this State. The relator has obtained a judgment against the corporation, and execution has been returned unsatisfied. No further proceedings at law can be resorted to to enforce collection. Whether the corporation is solvent or insolvent cannot be made to appear until an investigation has been had. Whether the sequestration provided for under the statute is proper or not, or whether resort should be had to assessments to satisfy the relator's claim, are questions that cannot be properly considered upon this motion. They necessarily involve a construction of the statute under which respondent company is organized, and a construction of the articles of association, and the by-laws made thereunder as well; and that construction will, to a greater or less extent, be modified by the circumstances surrounding each particular case wherein it is sought to be applied.

It is very manifest that *mandamus* is entirely inadequate in this class of cases, and that equity alone can furnish the proper remedy. Sequestration can be had in no other court. The examination of the affairs of a corporation, and the legal proceedings by which its assets are taken and applied to the payment of its debts, are particularly subjects of equitable cognizance, and what acts should be done or performed by its officers in the payment of its debts can only be ascertained and enforced when the true situation of the corporation is fully known, and its ability to pay and means of payment are judicially established. A court of equity is the proper forum for such proceedings, and the writ in this case must therefore be denied.

The other Justices concurred.